[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DISCLOSURE OF DEFENDANT'S STATEMENTS
The defendant doctor in this malpractice action objects to discovery as it relates to the production of two statements made by him. The defendant claims this information "is privileged, was prepared in anticipation of litigation at the request of the insurance carrier and the defendant's risk manager and under the reporting policies in place at the time for the defendant's employer for purposes of conducting an investigation of the incident in question. Said statements also contain the mental impressions, conclusions and/or opinions of the undersigned defendant's representative concerning the litigation of the subject claim."
(1)
At oral argument it was apparent that the "privilege" CT Page 1898 claim was based on the position that these statements were prepared in anticipation of litigation. Section 219 of the Practice Book which reflects our work product rule in effect qualifies that rule by saying in its last sentence:
 "A party may obtain without the showing required under this section, discovery of his (sic) own statement and of any nonprivileged statement of any other party concerning the action or its subject matter."
The defendant is certainly a party, the statements obviously concern this action or its subject matter. The question then becomes under this quoted language of P.B. § 219 are they "privileged." If not, then under the terms of the above quoted language they are discoverable even if prepared in anticipation of litigation by the very terms of Rule 219 P.B.
Privileges are really evidentiary rules whereas the work product doctrine is a rule of discovery, Handbook ofConnecticut Evidence, Tait and La Plante, § 12.5.11, page 450; McCormick On Evidence, Vol. I, § 96 page 356. Thus work product does not concern "privileged" material in the usually accepted definition of that term — e.g., attorney-client, psychiatrist-patient, privilege for marital communications, etc.
The above quoted language of P.B. § 219 makes clear that a statement by a party made in anticipation of litigation is not because of that fact privileged and must be turned over to the other side unless it is protected by some recognized privilege.
(2)
Could there be a tenable claim that the statements made by the defendant doctor to the risk manager of his employer are protected by the attorney-client privilege? The statements were taken at the request of the employer's insurance carrier apparently under a standing policy to that effect. The carrier, of course, had an obligation to defend against claims. Defense counsel represents physicians at the medical center who are sued. CT Page 1899
McCormick states that "an apparent majority" holds that communications by an insured to an agent of the insurer bound by contract to provide the defense for both are privileged. The basis for such a position is that the insurer is bound by the policy to defend the insurer, McCormick on Evidence,
Volume I, § 91 page 337 at footnote 17 citing Gene Compton'sCorporation v. Superior Court, 205 Cal.App.2d 365 (1962);People v. Ryan, 197 N.E.2d 15 Ill. (1964); Brakhage v. Graff,206 N.W.2d 15 (Neb. 1973); Thomas v. Harrison, 634 P.2d 328
(Wyo. 1981); the following cases set forth the minority position Langdon v. Champion, 752 P.2d 999 (Ala., 1988),DiCenzo v. Izawa, 723 P.2d 171 (Haw, 1986); Jacobi v. Podevels,127 N.W.2d 73 (Wis. 1964). One reported Connecticut case sides with the minority, Jacques v. Cassidy, 28 Conn. Sup. 212
(1969). According to McCormick, the "minority" jurisdictions would accord the privilege where the insurer's agent is acting under the direction of an attorney hired to represent the insured. Thus in Langdon v. Champion, supra the court says the privilege does not extend in these situations: "except in those cases where it can be shown that the adjustor received the communication at the express direction of counsel for the insured," 752 P.2d at page 1004. There is no claim that these statements were made at an attorney's request.
It is difficult to not accept the plaintiff's observation that what is involved here is no different from the report of a driver to his employer after an accident. See Hurley v.Connecticut Co., 118 Conn. 276, 289 (1934). I do not think the privilege should be extended because companies nowadays employ people with fancy titles like "risk manager." I assume even in 1934 companies were sued and gathered these statements with some idea that on some future occasion they might have to deliver them to their lawyer or their insurance company. As the plaintiff notes, an extension of the privilege to all situations where an attorney involvement is anticipated would greatly expand the scope of material not subject to disclosure to opposing counsel and in court. Much of the internal communications in any business in some sense could be said to be prepared in anticipation of litigation, whether or not the insurer also requests the information or statement. Should such material be protected by the privilege even if the employee is making a report to his boss about information which could serve the function of promoting internal quality control and expense reduction even though the statement is taken at the insurer's request in anticipation of some future CT Page 1900 litigation?
Furthermore, as noted, the statements were made here to the employer's risk manager at the insurer's request. Under these circumstances, it is unclear to me that in this case a privilege could be claimed under the so-called majority rule. The statements were made here not to an "agent" of the insured but to the risk manager of the defendant doctor's own employer. Again, extending the privilege under McCormick's reasoning to such situations would immunize a vast amount of internal corporate and governmental agency communications from being disclosed to the light of day.
In a recent case that rejected application of the privilege to communications between the insured and the insurer a court referred to the "majority opinion" to the contrary as a "shrinking majority," Langdon v. Champion,752 P.2d at p. 1002, and the court went on to say one of the reasons it and other courts do not recognize the privilege is because the insurer may use the information it gathers for purposes inimical to the insured's interest, e.g. claim of non cooperation, some other defense to insurer's liability under the policy, Id. at p. 1003. How can it be claimed then under such circumstances that the insured's communication must be protected by the privilege since he or she knows or assumes what he or she says will be used by some yet unknown attorney to protect his interest in some future possible suit? Also see, DiCenzo v. Izawa, 723 P.2d p. 177, Jacobi v. Podevels,127 N.W.2d p. 176. All of this is even more applicable when the insured's employee doctor is making the communication to the employer's risk manager. How could the doctor assume that all the information he gave to the risk manager could be communicated to the carrier? What if the communication raised questions about coverage? What would the risk manager do then?
I do not believe the defendant has a right to object to the delivery of these statements to the plaintiff. They are not barred by PB 219 or by the attorney-client privilege. CT Page 1901